**Charles FARRELL, Plaintiff–Appellant,**

**v.**

**Captain Lawrence McDONOUGH, Defendant–Appellee.**

**No. 90–3823.**

United States Court of Appeals, Seventh Circuit.

Argued May 19, 1992.

Decided June 30, 1992.

Rehearing and Rehearing En Banc Denied July 29, 1992.

Kenneth N. Flaxman, Chicago (argued), for plaintiff-appellant.

Claudia E. Sainsot, Deputy Atty. Gen. (argued), Office of Atty. Gen., Chicago, Gregory T. Riddle, Asst. Atty. Gen., Office

of Atty. Gen., Crim. Appeals Div., Springfield, Ill., for defendant-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Charles Farrell, an inmate with the Illinois Department of Corrections (IDOC), appeals the district court's dismissal of his section 1983 complaint against Captain Lawrence McDonough. The district court held that Farrell's amended complaint against McDonough was time-barred. We agree that Farrell's complaint against McDonough is untimely and affirm.

## I.

On February 6, 1986, Farrell initiated this action against several IDOC officials and employees, alleging primarily that they had been deliberately indifferent to his medical needs in violation of the Eighth Amendment to the United States Constitution. One of Farrell's allegations was that on January 11, 1985 he had been transferred from a low gallery to a high gallery in contravention of a permit entitling him to remain on a low gallery because of a leg injury. Farrell alleged that he twice fell and injured himself as a result of this transfer. Although Farrell named several defendants in his original complaint, McDonough was not one of them. Farrell did not name McDonough as a defendant until he filed an amended complaint on October 12, 1989. The district court dismissed Farrell's complaint against McDonough as untimely and this appeal followed.

## II.

Farrell advances a three-pronged argument in support of his position that the district court erred in finding his complaint against McDonough untimely. First, he asks this court to overrule *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276 (7th Cir.1989) (per curiam), which held that section 1983 cases arising in Illinois are governed by the state's two-year statute of limitations for personal injury

claims. Ill.Rev.Stat. ch. 110, ¶ 13–202 ("section 202"). Farrell insists that we should instead apply Illinois' five-year statute of limitations for "all civil actions not otherwise provided for," Ill.Rev.Stat. ch. 110, ¶ 13–205 ("section 205"), a result he says is compelled by an analogous decision regarding the statute of limitations for section 1983 claims arising in Wisconsin. *See Gray v. Lacke*, 885 F.2d 399 (7th Cir.1989) (section 1983 claims arising in Wisconsin governed by six-year personal rights statute rather than three-year statute covering "injuries to the person"), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Alternatively, Farrell asks us to find that his amended complaint against McDonough is timely either because the limitations period was tolled under Ill.Rev. Stat. ch. 110, ¶ 13–211, or because his amended claim relates back to the date his original complaint was filed. *See* Fed. R.Civ.P. 15(c). We address Farrell's arguments in turn, but find none persuasive.

## A.

Section 1983 does not contain a federal statute of limitations. Consequently, prior· to *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court instructed lower courts to apply the state statute of limitations "most analogous" to the particular section 1983 action being litigated. *Board of Regents v. Tomanio*, 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1980). In *Wilson*, however, the Court abandoned this case-by-case approach and directed lower courts to conduct the section 1983 statute of limitations inquiry at a higher level of abstraction. *Wilson* teaches that all section 1983 actions are best characterized as personal injury actions and that courts should therefore apply a state's *personal injury* statute of limitations to all section 1983 actions arising in that state. *Id.* at 280. Revisiting this topic in *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the Supreme Court further held that courts should choose a *general* personal injury statute over one applicable only to specified intentional torts in states that provide both

choices. *Id.* 109 S.Ct. at 581–82. Additionally, both *Wilson* and *Owens* stressed that courts should not resort to a residual or "catch-all" statute in the first instance, but only where state law does not provide a general personal injury statute. *Wilson,* 471 U.S. at 278, 105 S.Ct. at 1948; *Owens,* 109 S.Ct. at 582 n. 12.

In *Kalimara,* we relied on *Wilson* and *Owens* to hold explicitly in *Gray* that Wisconsin's six-year statute of limitations for injuries to personal rights applies to section 1983 actions arising there. We have since reaffirmed both *Kalimara, see Pearson v. Gatto,* 933 F.2d 521, 525 n. 3 (7th Cir.1991), and *Gray, see Kuemmerlein v. Board of Education,* 894 F.2d 257 (7th Cir.1990). Nonetheless, Farrell asks us to overturn *Kalimara* on the ground that it is doctrinally inconsistent with our later decision in *Gray. See also Wilson v. Giesen,* 956 F.2d 738 (7th Cir.1992); *Pearson,* 933 F.2d at 525 n. 3; *Smith v. National Health Care Services of Peoria,* 934 F.2d 95, 97–98 (7th Cir.1991) (all discussing, but not reaching, similar argument). Farrell's argument, however, mistakes the significant differences between Illinois' and Wisconsin's respective statute of limitations schemes for a doctrinal flaw. Although we did reach very different results in *Kalimara* and *Gray,* that difference stems from the different statutory schemes in Illinois and Wisconsin, not from any doctrinal distinction on our part.

In Illinois, we were faced with a choice between a general personal injury statute and a catch-all statute, and, in accordance with *Owens,* we chose the former. Farrell contests this choice on the ground that Illinois has limited section 202 to personal injuries that include a direct physical or mental injury component, *see Berghoff v. R.J. Frisby Mfg. Co.,* 720 F.Supp. 649, 652–53 (N.D.Ill.1989) (collecting cases), and that section 205, as Illinois' civil "catch-all" statute, consequently embraces any personal injury actions outside of section 202's scope. *See id.* Thus, we grant Farrell's point that not all wrongs underlying potential section 1983 actions may be covered by Illinois' interpretation of section 202. Since *Wilson,* however, it is not our task to select the "most analogous" limitations period for each section 1983 action; rather, we must apply one general personal injury statute of limitations to all section 1983 claims arising in a particular state. As the Court noted in *Owens:* "In *Wilson,* we expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action." *Owens,* 109 S.Ct. at 580 (quoting *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1944). Thus, *Kalimara* is not undermined by the fact that not every wrong that may give rise to a section 1983 action may fall within Illinois construction of section 202. "Because the § 1983 remedy is one that can 'override certain kinds of state laws,' and is, in all events, 'supplementary to any remedy any State might have,' it can have no precise counterpart in state law." *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945 (citations omitted). Despite the imperfect analogy of section 202 torts as compared to section 1983 torts, we are convinced that section 202 is best characterized as the type of general personal injury statute of limitations to which *Wilson* and *Owens* refer us and that section 205 is best characterized as the sort of catch-all statute from which *Wilson* and *Owens* deter us. *See Kalimara,* 879 F.2d at 277.

Our decision in *Gray* is not to the contrary, for there we were confronted with an entirely different statutory scheme. Wisconsin law provides (1) a statute of limitations applicable to "injuries to the person" and to wrongful death actions, *see* Wisc.Stat.Ann. § 893.54; (2) a statute applicable to injuries to personal rights and residual personal injury actions, *see id.* § 893.53; (3) at least two statutes applicable to certain enumerated intentional torts, *see id.* §§ 893.55, 893.57; and (4) at least two catch-all statutes, *see id.* §§ 893.50, 893.93. After easily eliminating both the intentional tort and the catch-all statutes, we were left with the question of whether to apply Wisconsin's personal injury or its personal rights statute of limitations to section 1983 actions arising there. Although neither *Wilson* nor *Owens* specifically answered this question, we reasoned that the two decisions considered together coun-

seled in favor of applying section 893.53, Wisconsin's personal rights and residual personal injury limitations period. *Gray,* 885 F.2d at 407–09; *see Wilson,* 471 U.S. at 278, 105 S.Ct. at 1948 ("Had the 42d Congress expressly focused on the issue decided today, we believe it would have characterized § 1983 as conferring a general remedy for injuries to personal rights."). Farrell argues that *Kalimara* and *Gray* are inconsistent because section 893.53 contains the same catch-all quality that disqualified Illinois' section 205. But, Wisconsin's section 893.53, unlike Illinois' section 205, did not present us with a statute that applied residually to personal injury actions *as well as all other civil actions.* As noted above, this is because Wisconsin, unlike Illinois, has separate catch-all provisions. Thus, there was nothing about Wisconsin's personal rights statute that counseled against its application and many factors that counseled in favor of its application to section 1983 actions. *See Gray,* 885 F.2d at 408–09 (discussing factors supporting application of section 893.53). That is, section 893.53 provided us with a statute of limitations applying to a broad range of personal rights actions as well as to residual personal injury claims, but did not become a catch-all statute by encompassing all other residual civil claims. Illinois law presented us with no such alternative.

In sum, we believe that both *Kalimara* and *Gray* are supported by the Supreme Court's teachings in *Wilson* and *Owens;* we take this opportunity to express our continuing adherence to both *Kalimara* and *Gray.* Farrell's section 1983 action is governed by Illinois two-year limitations period in section 202.

### B.

■ Farrell next argues that even though we apply a two-year limitations period to his claim, that period had not yet run when he filed his complaint against McDonough. He relies on Ill.Rev.Stat. ch. 110 ¶ 13–211 for support. As we explained in a recent case:

> Paragraph 13–211 of the Illinois Code of Civil Procedure tolls the statute of limita-

tions for certain plaintiffs, and has been amended twice in recent years. Ill.Rev. Stat. ch. 110 ¶ 13–211. Until November 23, 1987, paragraph 13–211 tolled the statute of limitations for a prisoner's claims until he was released. The amendment ("1987 amendment") that went into effect on that date, however, made the tolling provision inapplicable to claims against past or present employees of the Illinois Department of Corrections. A second amendment, effective January 1, 1991 ("1991 amendment"), deprived prisoners of any tolling benefits.

*Giesen,* 956 F.2d at 741. Because Farrell's claim involving IDOC officials and employees was initially filed before the 1987 amendment, the question is what effect the 1987 amendment had on the timeliness of his claim. The district court properly held that the 1987 amendment had shortened the statute of limitations applicable to Farrell's claim, and thus would apply retroactively to bar his claim only if he had a "reasonable" time to file his claim against McDonough after the amendment. *Giesen,* 956 F.2d at 741–42; *Pearson,* 933 F.2d at 526; *see Knox v. Lane,* 726 F.Supp. 200 (N.D.Ill.1989); *Phillips Prods. Co. v. Industrial Comm.,* 94 Ill.2d 200, 68 Ill.Dec. 500, 502, 446 N.E.2d 234, 236 (1983). The determination whether the period is reasonable is made on a case-by-case basis and has varied from as short as nine months to as long as fifteen months. *Pearson,* 933 F.2d at 526. The district court found that the 1987 amendment barred Farrell's claim because he waited an unreasonable time to file his amended complaint against McDonough: from November 1987 to October 1989, or twenty-three months. The district court's conclusion that a twenty-three month delay is unreasonable is well-supported and is affirmed. *See Giesen,* 956 F.2d at 742 (23–month delay is unreasonable); *Knox,* 726 F.Supp. at 203 (same).

### C.

■ Finally, Farrell asserts that under Federal Rule of Civil Procedure 15(c), his amended complaint against McDonough "relates back" to the date his complaint was originally filed. The district court held

that Farrell did not meet his burden of demonstrating that McDonough received notice of his complaint within the applicable limitations period. *See Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986) (strictly and literally applying Rule 15(c); *Lojuk v. Johnson*, 853 F.2d 560, 562–63 (7th Cir.1988); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir. 1982). Moreover, Farrell does not, and cannot, claim that he was mistaken as to McDonough's proper identity. In his complaint, he stated: "Jan. 11, 1985, The Plaintiff, was told by the East Cell House, Sgt., Lt., and Capt. (Shift 7–3), that he had to move off the Low gallery (2 gall.), and move to a high gallery (10 gall.)." R. 1 at 5. Thus, the record does not disclose that McDonough should have known that this action would have been brought against him but for a mistake in identifying the proper party within the meaning of Rule 15(c)(2). *See Lojuk*, 853 F.2d at 562–63. Accordingly, Rule 15(c) does not rescue Farrell's complaint against McDonough.

AFFIRMED.